IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RITA CRAMPTON, Personal Representative of the Estate of Jane Ann Martin, deceased,<br><br>    Plaintiff,<br>v.<br><br>CHRIS MORRIS; *et al.*,<br><br>    Defendants. | Case No.: 21-CV-053-JFH<br><br>ATTORNEY LIEN CLAIMED<br><br>JURY TRIAL DEMANDED |

## DEFENDANT WARDEN ABOUTANAA EL HABTI'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendant Aboutanaa El Habti, by and through his attorneys of record, respectfully moves to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reason that the First Amended Complaint fails to state a claim upon which relief can be granted. In support thereof, Defendant submits the following brief:

## STATEMENT OF THE CASE

On or around November 5, 2019, Jane Ann Martin, the deceased, was taken into custody by the Pittsburg County Sheriff's Office and detained at the Pittsburg County Jail. *See* Doc. 23 at ¶¶ 1, 15. While detained at the county jail, the First Amended Complaint alleges that Ms. Martin reported pain, had difficulty breathing, and had general feelings of sickness but did not receive medical treatment. *Id.* at ¶¶ 18-22. On or around November 14, 2019, Ms. Martin was transported to ODOC custody at Mabel Bassett's Correctional Center ("MBCC") but was later pronounced dead by St. Anthony's Hospital physicians "just hours after arriving at Mabel Bassett." *Id.* at ¶ 38.

In this matter, Plaintiff alleges that all defendants acted with deliberate indifference to Ms. Martin's health and safety but specifically asserts a 42 U.S.C. § 1983 supervisory liability claim against MBCC's Warden El Habti. *Id.* at pp. 13-14. However, Warden El Habti, in his official capacity, is

immune from suit, and Plaintiff has failed to plead sufficient facts establishing Warden El Habti's personal participation in the death of Jane Ann Martin. For reasons set forth below, Plaintiff's claims against Warden El Habti must be dismissed.

## STANDARD FOR DISMISSAL

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing … entitle[ment] to relief." The required "short and plain statement" must provide "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), (overruled on other grounds, *Twombly*, 550 U.S. at 562-563)). In order to show an "entitlement to relief" a plaintiff must plead "more than labels and conclusions … ." *Twombly*, 550 U.S. at 555. The initial pleading must contain "[f]actual allegations [which are sufficient] to raise a right to relief above the speculative level." *Id.* In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face[ ]" not just conceivable. *Id.* at 570. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); see also *Gee v. Pacheco*, 627 F.3d 1178, 1184

(10th Cir. 2010). Plaintiff must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. Rather, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 565 n. 10). Plausibility does not mean "likely to be true," it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Id.*

## ARGUMENT AND AUTHORITY

**PROPOSITION I:** **PLAINTIFF'S § 1983 CLAIMS FOR DAMAGES AGAINST WARDEN EL HABTI, IN HIS OFFICIAL CAPACITY, MUST BE DISMISSED WITH PREJUDICE**

Plaintiff's request for monetary damages against Warden El Habti, in his official capacity, for any alleged § 1983 claim is barred by Eleventh Amendment immunity. As alleged, Plaintiff's official capacity claim is actually a claim against the State of Oklahoma. Yet the Eleventh Amendment protects states, and arms of the state, from being sued in federal court by citizens of its own state or citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 662 (1974); *Steadfast Insurance Co. v. Agricultural Insurance* Co., 507 F.3d 1250 (10th Cir. 2007).

A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 72–73, 120 S. Ct. 631 (2000); *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240 (1999). Unless the State unequivocally waives its Eleventh Amendment immunity, a federal court lacks jurisdiction to award monetary damages in a civil rights action. *See Guttman v. Khalsa*, 669 F.3d 1101, 1110 (10th Cir. 2012) ("Although a state may waive the sovereign immunity granted to it under the Eleventh Amendment, we require a showing of unequivocal intent to do so."); *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Fla. Dep't of Health &*

*Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981); *Alabama v. Pugh*, 438 U.S. 781 (1978). Here, the State has not waived sovereign immunity and is entitled to Eleventh Amendment immunity for Plaintiff's § 1983 claim.

More importantly, state officials are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). An action for the violation of one's civil rights may be brought under 42 U.S.C. § 1983 against "[e]very person" who, acting under color of law, deprives someone of a right, privilege, or immunity guaranteed by the United States Constitution and federal laws. Because the state is the real party in interest when an official has been subjected to suit, *Edelman v. Jordan*, 415 U.S. at 663, a judgment in a § 1983 suit against an official "in his official capacity" imposes liability against the entity that he represents. *Brandon v. Holt*, 469 U.S. 464, 472 (1985). While "state officials literally are persons," a suit against an official "is no different from a suit against the state itself." *Will*, 491 U.S. at 71 (citations omitted). Based on the U.S. Supreme Court's decision in *Will*, Warden El Habti, in his official capacity, is not a "person" for purposes of 42 U.S.C. § 1983 and such claims must be dismissed with prejudice.

**PROPOSITION II:** **PLAINTIFF FAILS TO ADEQUATELY PLEAD A § 1983 SUPERVISORY LIABILITY CLAIM AGAINST WARDEN EL HABTI**

Plaintiff's individual capacity claim against Warden El Habti is predicated on a theory of supervisory liability, but § 1983 does not authorize liability under a theory of *respondeat superior*. Rather, Plaintiff must plead sufficient facts to establish an affirmative link between Warden El Habti and the alleged violation of Ms. Martin's constitutional rights. To establish an affirmative link under supervisory liability, Plaintiff must plead that Warden El Habti (1) promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm **and** (3) acted with **deliberate indifference** as required to establish the alleged constitutional deprivation. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)(emphasis added);

*Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). It is simply not enough to reiterate the legal elements of supervisory liability, as Plaintiff has done, and put forth vague and conclusory policies against all named defendants. *See* Doc. 23 at pp. 13-14.

First, Plaintiff fails to plead or otherwise identify any MBCC policy for which Warden El Habti promulgated, created, implemented or possessed responsibility for that **caused or led** to Ms. Martin's death. Instead, Plaintiff puts forth conclusory allegations of "longstanding, systemic deficiencies in the medical" care provided to inmates against the county jail and MBCC as an attempt to meet this standard. *See id.* at p. 11 ("there are deep-seated and well-known policies, practices and/or customs of systemic, dangerous, and unconstitutional failure to provide adequate medical care to inmates at the Pittsburg County Jail and/or Mabel Basset"). However, Plaintiff's factual allegations of any alleged inadequate MBCC policies constitute legal conclusions and bare assertions that are not entitled to an assumption of truth. In fact, the substance of these allegations suggest policies that are obviously not established protocol at MBCC.

Second, Plaintiff does not plead any facts to suggest that Warden El Habti set in motion a series of events that he knew or reasonably should have known would cause MBCC employees to deprive Ms. Martin of her constitutional rights. To establish causation, Plaintiff must plead that MBCC's internal policy and procedures for which Warden El Habti has responsibility "caused the complained of constitutional harm." *Dodds* 614 F.3d at 1199. Given that Plaintiff has put forth only conclusory and/or conjectured MBCC policies, the Court is left to speculate as to which MBCC policy may have caused or led to Ms. Martin's death. But even so, the facts currently pled suggest that MBCC staff responded reasonably to Ms. Martin's health issues upon her arrival at MBCC on November 14, 2019. *Farmer v. Brennan*, 511 U.S. 825, 833–34, 844 (1994)("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Contrary to Plaintiff's legal conclusions, the factual allegations in the First Amended Complaint suggest that MBCC staff promptly evaluated Ms. Martin, monitored her health, and provided adequate medical treatment – considering the alleged lack of adequate medical treatment Ms. Martin received prior to entering MBCC custody. *See* Doc. 23 at pp. 5-8. Specifically at MBCC, the facts allege that within the first six (6) hours of Ms. Martin's incarceration at MBCC, Ms. Martin was evaluated, monitored extensively, prescribed medication, observed and taken care of until the arrival of paramedics and her transport to the emergency room. *Id.* at ¶¶ 26-38. Upon her arrival at MBCC, an ODOC intake officer noted Ms. Martin's breathing trouble and advised the nurse, [*id.* at ¶ 26], the nurse monitored and observed Ms. Martin several times before performing vitals, [*id.* at ¶¶ 27-29, 34], Ms. Martin was provided oxygen to assist her breathing, [*id.* at ¶ 36] Ms. Martin was placed in the medical unit for closer observation and monitoring, [*id.* at ¶34, 36], a nurse ordered an ambulance and Ms. Martin was taken to an infirmary cell [*id.* at ¶¶ 35-37], and paramedics transported her to the hospital. *Id.* These allegations, when read with the entirety of the First Amended Complaint, identify prompt, reasonable and adequate actions taken by MBCC staff to ensure Ms. Martin's health.

In any event, the Tenth Circuit has affirmed that a claim against a direct supervisor simply because he is in charge of the detention center is not enough to hold a supervisor liable in his individual capacity. *Durkee v. Minor*, 841 F.3d 872, 878 (10th Cir. 2016). Thus, Plaintiff's attempt to link the alleged unconstitutional acts of ODOC and/or MBCC employees to Warden El Habti must fail. The Warden "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 129 S.Ct. at 1948 (citation omitted); *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151–52 (10th Cir.2006) ("There is no concept of strict supervisor liability under §1983."). Because vicarious liability is inapplicable to Plaintiff's §1983 claim, Warden El Habti is "only liable under §1983 for [his] own culpable involvement in the violation of a person's constitutional rights." *Serna*, 455 F.3d at 1151–52. But Plaintiff fails to plead sufficient facts to suggest

Warden El Habti's own individual actions caused Ms. Martin's constitutional rights to be violated or that he possessed the requisite deliberate indifference state of mind. *Iqbal*, 129 S.Ct. at 1948. In fact, Warden El Habti's is not alleged to have personally participated in any of the events that occurred within the six hours of Ms. Martin's incarceration at MBCC. *See generally* Doc. No. 23. There are no allegations that the Warden was advised of Ms. Martin's medical condition, that he instructed his employees to act in any way, or that he was present during the six hour period of Ms. Martin's incarceration. *Id.* at ¶¶ 26-37. Without such facts, Plaintiff cannot hold Warden El Habti liable for any alleged unconstitutional acts conducted by his subordinates – particularly since Plaintiff has not identified a plausible MBCC policy that ODOC employees failed to safeguard within this time frame.

Finally, Plaintiff's specific allegations such as "knowledge" and "acquiescence" are also insufficient to support a finding of personal participation and potential supervisory liability. Doc. 23 at ¶¶ 50, 53, 57, 62. This is so, even if some or all the underlying practices did constitute violations of the Constitution. In *Iqbal*, the Supreme Court rejected the notion that pleading that a supervisor knew of and acquiesced in a constitutional violation committed by his subordinates establishes his personal participation in the underlying violation:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. *Id.*, 129 S.Ct. at 1949.

The Supreme Court reasoned that Iqbal's "conception of 'supervisory liability' is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents." Thus, supervisory liability is unavailable in a § 1983 action when Plaintiff pleads no more than conclusory allegations of "actual" or "constructive" knowledge.

Although Plaintiff claims that the Warden "knew" of bad policies or practices and thus his mere knowledge subjects him to supervisory liability, this logic fails pursuant to *Iqbal*. Plaintiff broadly

asserts that Warden El Habit "knew (either through actual or constructive knowledge)" that some unidentified policies, practices and/or customs posed a substantial risk to the health and safety of inmates like Ms. Martin. *See* Doc. 23 at ¶ 78. But even this allegation is conclusory as Plaintiff fails to identify what specific policies pose such risk to MBCC inmates to provide such notice to Warden El Habti. Even more, the factual allegation section in his First Amended Complaint wholly fails to plead any facts regarding Warden El Habti's actions or inactions on November 14, 2019. *Id.* at ¶¶ 26-51. Thus, this Court must evaluate the plausibility of the First Amended Complaint, particularly with conclusory allegations such as Warden El Habti "encouraged, ratified, and/or approved of the acts" on November 14, 2019. *Id.* at ¶ 79.

Finally, Plaintiff does not adequately plead Warden El Habti's state of mind. To adequately state a claim, "it is particularly important that plaintiff[] make clear exactly who is alleged to have done what to whom, as distinguished from collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (internal quotation marks and alterations omitted). Here, Plaintiff continues to put forth bare assertions against all defendants that they "failed to take reasonable steps to alleviate the risk of deliberate indifference to inmates.'" Doc. 23 at pp. 13-15. But these broad statements are "inadequate to demonstrate that [Warden El Habti] knew there were specific policies being violated and failed to enforce them" and was "likewise inadequate to demonstrate awareness of an absence of specific policies to prevent the violation of inmates' constitutional rights." *See Smith v. Allbaugh*, 987 F.3d 905, 912 (10th Cir. 2021).

A plaintiff pleading supervisory liability must meet the *Iqbal* standard. The Tenth Circuit's approach has not been significantly altered by *Iqbal*, because it has consistently required a consonant showing. Here, Plaintiff has not met her burden under *Iqbal* and *Dodds*. There are no facts to suggest a legitimate policy nor are there facts to suggest that Warden El Habti possessed the requisite state of mind to establish deliberate indifference. There are no facts to suggest that Warden El Habti was

aware of facts from which the inference could be drawn that a substantial risk of serious harm existed to Ms. Martin, nor that he drew that inference within those six hours of MBCC custody. For these reasons, Warden El Habti did not possess the requisite state of mind for the underlying constitutional violations and Plaintiff has not satisfied all three elements to establish a valid claim under a supervisory liability theory against this Defendant. This claim must be dismissed.

**PROPOSITION III:**   **WARDEN EL HABTI IS ENTITLED TO QUALIFIED IMMUNITY**

Individually named defendants are immune from Plaintiff's claims for damages under the doctrine of qualified immunity. Qualified immunity shields government officials from civil liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Hernandez v. Mesa*, 173 S. Ct. 2003 (2017); *see also Kisela v.* Hughes, 138 S. Ct. 1148 (2018) (holding that the law enforcement officer's use of force did not violate clearly established law, and thus, officer was entitled to qualified immunity). The purpose of this immunity is to "protect the public from unwarranted timidity on the part of public officials," "to ensure that talented candidates are not deterred by the threat of damages suits from entering public service," and to reduce "the chance that lawsuits will distract from the performance of public duties." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks omitted) (quoting *Richardson v. McKnight*, 521 U.S. 399 (1997)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.").

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every

reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012).

In this case, as laid out above, Plaintiff has failed to sufficiently allege that Warden El Habti violated Ms. Martin's constitutional rights under a supervisory liability theory or that he personally participated in the alleged underlying constitutional violation. Similar to *White v. Pauly*, this Court should only consider facts that were knowable to Warden El Habti at the time of Ms. Martin's death. *White v. Pauly*, 137 S.Ct. 548, 550 (2017). Here, there are no facts to suggest that Warden El Habti had the requisite knowledge to link his actions to Ms. Martin's death and absent such knowledge, the conduct of this defendant cannot give rise to a constitutional violation. Accordingly, Plaintiff fails to meet either prong of the qualified immunity analysis and as noted in Proposition II, Warden El Habti cannot be held liable under a supervisory liability claim for the alleged constitutional violations. Without a constitutional violation, Plaintiff cannot overcome the qualified immunity defense. Therefore, Warden El Habti is entitled to qualified immunity.

## CONCLUSION

For the reasons set forth herein, Warden El Habti respectfully requests this Court dismiss Plaintiff's First Amended Complaint against him entirely.

Respectfully submitted,

/s/ Jacqueline Zamarripa
**DESIREE SINGER, OBA# 33053**
**JACQUELINE ZAMARRIPA, OBA#33647**
Assistant Attorneys General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:     405.521.3921
Facsimile:      405.521.4518
Email: Desiree.Singer@oag.ok.gov
Email: Jackie.Zamarripa@oag.ok.gov
*Attorneys for Defendants ODOC and El Habti*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Donald E. Smolen, II
Laura L. Hamilton
Dustin Vanderhoof
Jack Warren
611 S. Detroit Ave.
Tulsa, OK 74120
*Attorneys for Plaintiff*

                                        /s/ Jacqueline Zamarripa
                                        Jacqueline Zamarripa